UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. GREGORY, JR., | ) | Case No. 5:17CV626 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| WARDEN EDWARD SHELDON, | ) | |
| | ) | **Report and Recommendation of** |
| | ) | **Magistrate Judge** |
| Respondent. | ) | |
| | ) | |

On March 11, 2017, Petitioner David A. Gregory, Jr. ("Petitioner") executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, which was filed on March 24, 2017. ECF Dkt. #1. Petitioner seeks relief from his convictions entered in the Summit County, Ohio Court of Common Pleas, for illegal assembly or possession of chemicals for the manufacture of drugs and attempted prohibitions concerning pseudoephedrine products in violation of the Ohio Revised Code ("ORC"). ECF Dkt. #9-1 at 14. On November 6, 2017, Respondent, Edward Sheldon, Warden of the Mansfield Correctional Institution ("Respondent") where Petitioner is currently housed, filed an answer/return of writ. ECF Dkt. #9. Petitioner filed a traverse on November 29, 2017 and he filed a "Request for a Summary Judgement/Ruling" on September 10, 2018. ECF Dkt. #s 10, 11.

For the following reasons, the undersigned RECOMMENDS that the Court dismiss Petitioner's § 2254 federal habeas corpus petition in its entirety with prejudice and deny Petitioner's "Request for a Summary Judgement/Ruling." ECF Dkt. #s 1, 11.

## 1.    PROCEDURAL HISTORY

In its November 25, 2015 opinion, the Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. ECF Dkt. #9-1 at 117-121. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set forth by the Ohio Court of Appeals, the facts are:

On January 21, 2014, Detective Paul Laurella of the Barberton Police Department Narcotics Division was conducting surveillance on Mr. Gregory's house for suspected drug activity. Detective Laurella was undercover and was observing events from a business across the street from Mr. Gregory's house. Detective Laurella observed Mr. Gregory exit the house with a full Save-A-Lot grocery bag, which he placed in the car in the front passenger seat. Mr. Gregory went back into the house and came back out carrying a box that he put in backseat of the vehicle. At the same time, Detective Laurella noticed a woman leave the house, get into a black car, leave, drive a short distance away, return to Mr. Gregory's house, sit in the car for a short time, and then leave again. Detective Laurella testified that, in his experience, such behavior was consistent with the behavior of someone involved in the drug trade, who was checking to see whether the police were around in the area.

Mr. Gregory left and Detective Laurella followed him in an unmarked car. Detective Laurella alerted Officer Ben Hill, who was a uniformed patrol officer in a marked car, of the activities in case Detective Laurella would need assistance. Mr. Gregory drove past Barberton High School and ultimately stopped at 479 Glenn Street.

Mr. Boychi testified to the events at 479 Glenn Street. Mr. Boychi had known Mr. Gregory for many years, and had been living at Mr. Gregory's house at the time of the events at issue. According to Mr. Boychi, earlier that day, he and his friends Keith and Jennifer Penrod left Mr. Gregory's house and dropped Ms. Penrod off at an Akron court. Mr. Boychi and Mr. Penrod then went and stole approximately 50 to 60 packs of lithium batteries before picking up Ms. Penrod and driving to 479 Glenn Street. Mr. Boychi claimed that he stole the batteries to give them to Mr. Gregory in exchange for paying off a debt Mr. Boychi owed Mr. Gregory and to purchase more methamphetamine; Mr. Boychi was a methamphetamine addict.

When the group arrived at 479 Glenn Street, Mr. Gregory was already there. Mr. Boychi went into the house with the Save-A-Lot bag of batteries and told Mr. Gregory that he had the batteries and that Mr. Gregory should take care of Mr. Boychi's debt. In addition, Mr. Boychi claimed that Mr. Gregory gave him a little over a gram of methamphetamine. According to Mr. Boychi, he, Mr. Gregory, and Ms. Penrod then got in Mr. Gregory's wife's car to go back to Mr. Gregory's house. Mr. Gregory drove, Ms. Penrod sat in the front passenger seat, and Mr. Boychi sat in the back, on the passenger side of the vehicle. Mr. Boychi brought with him the Save-A-Lot bag containing the batteries and some other items not related to the charges.

Detective Laurella recognized one of the people who arrived at 479 Glenn Street as Mr. Boychi, whom Detective Laurella discovered had outstanding arrest warrants. Detective Laurella alerted Officer Hill and Officer Hill initiated a traffic stop of the vehicle approximately five feet from the grounds of Barberton High School.

Officer Hill informed Mr. Boychi of the warrants, arrested him, and placed him the back of the police cruiser. Officer Hill searched the immediate area around Mr. Boychi and found multiple packs of lithium batteries in a box on the back seat. Mr. Boychi testified that he told officers that the batteries were not his and that they were Mr. Gregory's. Officer Hill stated that from his training, he "kn[e]w that lithium batteries [were] used in the process of manufacturing methamphetamine." He indicated that, typically those manufacturing methamphetamine use three to four batteries in a batch, so, when he found so many batteries, to him, that indicated it was a large scale methamphetamine operation. He had "never personally seen th[at] many batteries at one time."

Because he was concerned about the possibility of there being other chemicals related to the manufacture of methamphetamine in the car, he contacted Detective Laurella and asked him to participate in the stop. Detective Laurella thereafter continued the search. Inside the box, he found an empty potato chip bag full of batteries. At trial, Mr. Boychi denied bringing the box or putting anything in the box in the backseat. On the floor of the back seat Detective Laurella found a Save-a-Lot grocery bag that contained batteries. In total, 26 or 27 packs of batteries were found in the car. Detective Laurella testified that the lithium metal in lithium batteries is a required ingredient in the one-pot method of making methamphetamine. He also testified that in all the methamphetamine labs he had investigated in the past, he had never seen that many lithium batteries in one place as the amount found in the car. Additionally, Detective Laurella found a small amount of methamphetamine on the floor of the backseat on the passenger side. At trial, Mr. Boychi admitted that the methamphetamine found in the car was his. No other chemicals used in the manufacture of methamphetamine were found in the car. There was another Save-a-Lot grocery bag found on the floor of the front passenger seat, but that bag only contained Ms. Penrod's personal possessions. Ms. Penrod and Mr. Gregory were searched and no items used in the manufacture of methamphetamine were found on their person. Ms. Penrod and Mr. Gregory were allowed to leave and Mr. Gregory was not arrested until later.

Detective Laurella testified that after searching NPLEx, which allows law enforcement officers to determine how much and how frequently someone has purchased pseudoephedrine products, he found that Mr. Gregory had, on more than one occasion, attempted to purchase more than the amount of pseudoephedrine products authorized by law in a 30-day period and was blocked from doing so. Detective Laurella indicated that pseudoephedrine is also an essential ingredient in the one-pot method of manufacturing methamphetamine.

Given all of the circumstances, including the presence of methamphetamine in the car, the fact the Mr. Gregory tried to purchase more pseudoephedrine than authorized by law, and the number of batteries found in the car, Detective Laurella believed that the batteries were going to be used in the manufacture of methamphetamine.

Detective Laurella testified that when Mr. Boychi originally spoke to the police, he told the officers that Mr. Gregory bought the batteries from "Penrod." Additionally, Mr. Boychi originally told the police that the methamphetamine found in the car was Ms. Penrod's, not his. Mr. Boychi testified that he pleaded guilty to a violation of R.C. 2925.041(A) that was a reduced charge and to possession of the methamphetamine, but indicated there were no promises made with respect to what sentence he would receive.

ECF Dkt. #9-1 at 117-122.

## A.   **State Trial Court**

In its April 2014 Term, the Summit County, Ohio Grand Jury indicted Petitioner for:

(1) illegal assembly or possession of chemicals for the manufacture of drugs in violation of ORC

§ 2925.041(A) with a criminal forfeiture specification; and (2) attempted prohibitions concerning

pseudoephedrine products in violation of ORC §§ 2925.55(B)/2923.02.  ECF Dkt. #9-1 at 4-5.  The

grand jury thereafter indicted Petitioner for intimidation of a crime victim or witness in violation of

-3-

ORC § 2921.04(B)(2)/(B)(3).  *Id*. at 7.

On July 28, 2014, the Summit County Court of Common Pleas issued a journal entry indicating that on July 18, 2014, the jury returned a verdict finding Petitioner guilty of illegal assembly or possession of chemicals for the manufacture of drugs and attempted prohibitions concerning pseudoephedrine products, and finding him not guilty of intimidation of a crime victim or witness.  ECF Dkt. #9-1 at 14.  The trial court further indicated that at the close of the State of Ohio's evidence, the court found no evidence to show that Petitioner had any ownership in the vehicle that was the subject of the criminal forfeiture specification in Count 1.  *Id.* On September 8, 2014, the trial court sentenced Petitioner to a mandatory prison term of 5 years on the illegal assembly or possession conviction, and 90 days in prison for the attempted prohibitions conviction, with the sentences to be served concurrently to one another, but consecutively to a sentence in another case.  ECF Dkt. #9-1 at 15-17.

**B.**    **Direct Appeal**

On September 24, 2014, Petitioner filed a direct appeal to the Ohio Ninth District Court of Appeals.  ECF Dkt. #9-1 at 21.  In his appellate brief, Petitioner, through counsel, asserted the following assignments of error:

1.  R.C. 2925.041 is unconstitutionally vague as applied to Gregory because it contains vague enforcement standards and fails to provide adequate notice of the type of conduct prohibited.

2.  Gregory's illegal assembly of chemicals conviction was not supported by sufficient evidence, which violated Gregory's rights under the 14th Amendment and mandates reversal.

3.  Gregory's illegal assembly of chemicals conviction was against the manifest weight of the evidence, and must be reversed.

4.  Gregory's rights to a fair trial and due process under the Federal and Ohio Constitutions as enumerated in Brady v. Maryland were violated when the State withheld potentially exculpatory evidence from Gregory's counsel, meriting reversal of Gregory's convictions.

*Id*. at 26-61.  The State of Ohio filed an appellate brief and Petitioner filed a reply brief.  *Id*. at 66-98, 99-111.  On November 25, 2015, the Ohio appellate court affirmed the trial court's judgment.  *Id*. at 112-128.

-4-

On December 28, 2015, Petitioner pro se filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #9-1 at 129. In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

1. Whether Appellant's Due Process rights were violated because R.C. § 2525.041(C) is unconstitutionally vague as applied to Gregory, mandating reversal of his illegal assembly of chemicals conviction.

2. Whether Gregory's illegal assembly of chemicals conviction was not supported by sufficient evidence, which violated Gregory's rights under the 14th Amendment and mandates reversal.

3. Whether Gregory's rights to a fair trial and due process under the Federal and ohio[sic] Constitutions as enumerated in Brady v. Maryland were violated when the State withheld potentially exculpatory evidence from Gregory's counsel, meriting reversal of Gregory's convictions.

4. Whether Gregory's illegal assembly of chemicals conviction was against the manifest weight of the evidence, and must be reversed.

*Id.* at 131-146. The State of Ohio filed a waiver of memorandum in response. *Id.* at 164. On February 24, 2016, the Ohio Supreme Court declined jurisdiction to accept Petitioner's appeal. *Id.* at 165.

### C.    Motion for New Trial

On April 4, 2017, Petitioner, pro se, filed a motion for new trial pursuant to Rule 33 of the Ohio Rules of Criminal Procedure in the trial court. ECF Dkt. #9-1 at 166-167. . Petitioner asserted that he had newly discovered evidence, which was an attached sworn affidavit dated February 28, 2017 by Jennifer Penrod, a person who was with Petitioner in the vehicle that he was driving when the police pulled over the vehicle and found the evidence that was used at trial against him. ECF Dkt. #9-1 at 167-168. In her affidavit, Ms. Penrod states that she was an occupant in the vehicle that Petitioner was driving on January 21, 2014 and she attests that neither she nor Petitioner knew the contents of the bag that Mr. Boychi had with him when he was sitting in the backseat of Petitioner's vehicle. *Id.* at 167. Ms. Penrod relates that Mr. Boychi asked Petitioner for a ride to his girlfriend's house and when Mr. Boychi got into Petitioner's vehicle, he had a white Save-A-Lot grocery bag with him. *Id.* She attests that when the police pulled over Petitioner, Mr. Boychi told the police that the bag belonged to Petitioner. *Id.* Petitioner also filed his own affidavit dated March 29, 2017 in which he alleged that he received the ineffective assistance of counsel at trial because counsel did

-5-

not call Ms. Penrod as a witness. *Id*. at 168. Petitioner further stated that Frank Boychi, the passenger in Petitioner's vehicle that he states was actually the owner of the evidence that resulted in Petitioner's charges and conviction, testified falsely at his trial and the statement that Mr. Boychi made to the police was deliberately withheld from defense counsel until after the State of Ohio discharged Mr. Boychi as a witness. *Id*. at 168. Petitioner also stated in his affidavit that he was entrapped by police because they followed his car for 2 miles before pulling him over in a school zone. *Id.* Petitioner further stated that he was innocent of all charges. *Id.* at 169. The State of Ohio filed a memorandum in response on April 6, 2017. *Id*. at 170-172.

The trial court denied the motion on April 20, 2017. ECF Dkt. #9-1 at 174-178. Petitioner did not appeal this determination.

## II. 28 U.S.C. § 2254 PETITION

On March 11, 2017, Petitioner, executed the instant federal petition for a writ of habeas corpus, which was filed with the Court on March 24, 2017. ECF Dkt. #1. Petitioner asserts the following grounds for relief:

> GROUND ONE: Ineffective Assistance of Counsel
>
> Supporting Facts:
>
> (1) During trial court proceedings, counsel relied too much on the State's case and not his client.
>
> (2) Counsel failed to subpoena witnesses, interview potential witnesses.
>
> (3) Counsel failed to effective cross examine State witnesses (detective and Frank Boychi)
>
> GROUND TWO: State failed to disclose discovery/statement until after witness was released from testimony.
>
> Supporting Facts: Frank Boychi's January 22, 2014 Statement to Barberton police was withheld from Defense Trial Attorney until after the State had discharged him as a witness, well after he testified at the trial.
>
> GROUND THREE: Counsel failed to prepare for trial and investigate.
>
> Supporting Facts: Counsel failed to subpoena or call Jennifer Penrod as a witness even though he had knowledge of her. Counsel also failed to have a Suppression hearing on illegal search of vehicle, and Police's actions regarding the "time and place" of the traffic stop.

GROUND FOUR: The charge of O.R.C. §2925.041 is unconstitutionally vague as applied to me.

Supporting Facts: The jury lost its way with this when it weighed the evidence and it created a manifest injustice.

GROUND FIVE: The charges should be void for vagueness doctrine.

Supporting Facts: Due process demands that the State provide meaningful standards in its laws. (This ground was appeal at State level)

GROUND SIX: The conviction was not support by sufficient evidence.

Supporting Facts: The conviction was obtained by false testimony, orchestrated by prosecutor misconduct. (This ground was appealed at State level)

GROUND SEVEN: Brady -vs- Maryland violations.

Supporting Facts: The State deliberately and intentionally withheld evidence (statements) at trial. (This ground was appealed at State level)

GROUND EIGHT: Newly discovered evidence.

Supporting Facts: (Please see Affidavits)

*Id.* at 5-11, 14.  On November 6, 2017, Respondent filed an answer/return of writ.  ECF Dkt. #9. Petitioner filed a traverse on November 29, 2017.  ECF Dkt. #10.  Petitioner thereafter filed a "Request for a Summary Judgement/Ruling" on September 10, 2018, requesting a "summary judgment" in his case and reiterating that he is innocent and asking the Court to rule on his case. ECF Dkt. #11.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not

-7-

even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1). No issue concerning the statute of limitations arises in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*,

375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id*. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.  **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal

-9-

courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)  whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)  whether the state courts actually enforced the state procedural sanction;
> (3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice

test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## IV.  ANALYSIS

### A.  Procedural Default - Grounds for Relief Numbers 1 and 3, Numbers 2 and 7, Numbers 4 and 5, and 6

Respondent first asserts that Petitioner has procedurally defaulted Grounds for Relief Numbers 1 and 3.  ECF Dkt. #9 at 16-25.  The undersigned agrees and recommends that the Court find that procedural default bars these Grounds for Relief.  A petitioner commits a procedural default "by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Carter v. Mitchell*, 693 F.3d 555, (6th Cir. 2012 ), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)) (internal quotation marks omitted).  In order to avoid the procedural default of a ground for relief, a federal habeas petitioner "must have exhausted his or her remedies in state

court." *Carter*,  693 F.3d at 563-564, citing *O'Sullivan,* 526 U.S. at 842, 119 S.Ct. 1728 and 28 U.S.C. § 2254(b)(1)(A). A federal claim is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 693 F.3d at 564, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).  An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 693 F.3d at 564, citing *Williams*, 380 F.3d at 967.

As to Grounds for Relief Numbers 1 and 3, Petitioner did not raise any ineffective assistance of counsel claims on direct appeal to the Ohio appellate court or to the Supreme Court of Ohio. ECF Dkt. #9-1 at 26-60, 131-146.  He has therefore not fairly presented these claims to the Ohio courts or given the Ohio courts the opportunity to rule on them. *Wagner v. Smith*, 581 F.3d 410, 414-415 (6th Cir. 2009).  Further, Ohio courts apply the doctrine of *res judicata*, which precludes a defendant from raising a claim that was raised or that could have been raised at trial or on direct appeal. *See State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104, 39 O.O.2d 189 (1967); *see also State v. Cole*, 2 Ohio St. 3d 112, 113-14, 443 N.E.2d 169, 2 O.B.R. 661 (1982).  Petitioner's claims of ineffective assistance of counsel raised in Grounds for Relief Numbers 1 and 3 assert issues that could have and should have been raised on direct appeal, as Petitioner alleges that defense counsel relied upon the State's case during trial, failed to effectively cross-examine a witness at trial, failed to call Jennifer Penrod as a witness, and failed to have a suppression hearing.  ECF Dkt. #9-1 at 26-60, 131-146. Since Petitioner could have, should have, but did not raise these claims on direct appeal before the Ohio courts and now would be precluded from doing so, the undersigned recommends that the Court find that he has procedurally defaulted Grounds 1 and 3 of his § 2254 federal habeas corpus petition.

Respondent also asserts that Petitioner has procedurally defaulted Ground for Relief Number 2 concerning the State of Ohio's alleged failure to disclose to the defense and withheld Frank Boychi's statement made to the Barberton Police Department until well after he testified.  ECF Dkt. #9 at 19-21. Respondent further submits that Petitioner's Ground for Relief Number 7 is duplicative of his Ground for Relief Number 2 and is therefore also procedurally defaulted.  *Id*.

-12-

The undersigned notes that Petitioner, through counsel, raised an issue concerning the alleged failure of the State of Ohio to disclose a January 22, 2014 statement from Frank Boychi, the State's key witness at trial, until after he testified.  ECF Dkt. #9-1 at 56-59.  Petitioner asserted that this undisclosed statement "went directly to his credibility" and it was not disclosed to Petitioner's counsel until after Mr. Boychi was dismissed from testifying.  *Id*. at 59.  The Ohio appellate court addressed this claim, first indicating that it was not clear whether the State of Ohio failed to disclose the statement, as the State indicated at trial that it had disclosed the statement and Petitioner's counsel indicated that it had not, but then an off-the-record conversation was had with the trial court and Petitioner's counsel, and after that discussion, the issue of the statement was not raised again.  *Id.*at 127.  The Ohio appellate court further indicated that nothing in the record showed that Petitioner's counsel moved for a continuance of the trial or attempted to have Mr. Boychi retake the stand.  *Id.*  The appellate court further noted that the trial court record showed that some police reports were disclosed months before trial and some of those reports had a date of January 22, 2014 on them and contained statements made by Mr. Boychi.  *Id*.  Finally, the Ohio appellate court indicated that even if a delay existed in disclosing the statement and the contents were indeed material qualifying as *Brady* material, Petitioner failed to explain how the delay prejudiced him, and the court was not going to develop an argument on Petitioner's behalf.  *Id.*  The court therefore overruled Petitioner's assignment of error concerning Mr. Boychi's statement.  *Id*.  Petitioner appealed this determination to the Ohio Supreme Court and that court declined to accept jurisdiction over Petitioner's appeal.  *Id*. at 132, 137, 143-145, 165.

The undersigned recommends that the Court find that Petitioner has procedurally defaulted his Grounds for Relief Numbers 2 and 7.  In its opinion, the Ohio appellate court held that even if it presumed that there was a failure or delay by the prosecution in disclosing Mr. Boychi's January 22, 2014 statement, and assuming that the statement constituted *Brady* material, Petitioner had nevertheless failed to explain how the delayed disclosure prejudiced him.  ECF Dkt. #9-1 at 127.  The Ohio appellate court overruled Petitioner's *Brady* assignment of error, finding that it was not going to develop a prejudice argument for Petitioner and it cited to its own appellate rule, Rule 16(A)(7) of the Ohio Rules of Appellate Procedure in so holding.  *Id*.  Rule 16(A)(7) provides in

-13-

relevant part that an Ohio appellate court appellant must include in his brief:

> (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record in which appellant relies.  The argument may be preceded by a summary.

Federal courts in this District have found that Ohio App. R. 16(A)(7) is an adequate and independent ground under *Maupin* for finding a procedural default.  *See Campbell v. Bunting*, No. 1:14CV1187, 2015 WL 4984871, at *2 (N.D. Ohio Aug. 19, 2015)(Carr. J.), citing *e.g., Boynton v. Sheets*, No. 1:11CV2810, 2013 WL 1742711, *11 (N.D.Ohio Mar.5, 2013), report and recommendation adopted, 2013 WL 1747717 (N.D.Ohio) (Nugent, J.); *Johnson v. Bradshaw*, No. 1:03CV2509, 2006 WL 2945915, *9–*10 (N.D.Ohio) (Wells, J.).  Accordingly, since Petitioner failed to comply with the Ohio appellate court rule and the Ohio appellate court actually enforced its Rule, the undersigned recommends that the Court find that procedural default bars review of Petitioner's Grounds for Relief Numbers 2 and 7.

In Grounds for Relief Numbers 4 and 5, Petitioner makes assertions concerning ORC § 2925.041(C) being unconstitutionally vague as applied to him.  ECF Dkt. #1 at 10.  In the "Supporting Facts" portion of Ground for Relief Number 4,  Petitioner elaborates on this claim by stating that, "The jury lost its way with this when it weighed the evidence and it created a manifest injustice."  *Id.*  In Ground for Relief Number 5, Petitioner asserts that "the charges should be void for vagueness doctrine," and he elaborates in his "Supporting facts" for this Ground for Relief that, "Due process demands that the State provide meaningful standards in its laws." *Id.* at 14. Respondent contends that Petitioner has procedurally defaulted these Grounds for Relief because the state courts reviewed this claim only for plain error and plain error review is an adequate and independent state ground upon which to foreclose review under procedural default.  ECF Dkt. #9 at 22-23, citing *Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017).

Petitioner raised his manifest weight of the evidence argument and the alleged unconstitutional vagueness of ORC § 2925.041 before the Ohio courts.  ECF Dkt. #9-1 at 27, 42-50, 132, 138-141, 144-145.  In addressing Petitioner's manifest weight of the evidence assertion, the Ohio appellate court reviewed the evidence presented at trial and found that the jury did not lose its

-14-

way in finding him guilty of the charge. *Id*. at 43. The court reasoned that the jury was able to listen to Mr. Boychi's testimony and view his demeanor, and the court found that even though inconsistencies existed in Mr. Boychi's statements to police, it was the jury's job to evaluate the evidence and witness credibility and it was not unreasonable for them to conclude that Petitioner knowingly possessed the lithium batteries with the intent to manufacture methamphetamine and he did so in the vicinity of a school. *Id*. at 119-121. Concerning the void for vagueness assertion, the Ohio appellate court reviewed the challenge for plain error, noting that the issue was not raised in the trial court and therefore it was limited to a plain error review. *Id*. at 121-122. The appellate court held that Petitioner's argument was difficult to follow, but the evidence showed that he drove past a school and stopped within five feet from property belonging to the school, with 26-27 packs of lithium batteries, which were a required ingredient in making methamphetamine, and he intended to use the batteries to make methamphetamine. *Id.* at 123-124. The court concluded that a person of ordinary intelligence would understand that the Ohio statute proscribed Petitioner's conduct. *Id*. at 124. The Ohio Supreme Court declined jurisdiction over Petitioner's appeal, which included these assertions. *Id*. at 132, 165.

Respondent correctly asserts that procedural default applies to the claims that Petitioner presents in Grounds for Relief Numbers 4 and 5 insofar as they concern the alleged vagueness of ORC § 2925.041. In Ohio, when a defendant fails to make a contemporaneous objection to an alleged error, that error is waived. *See Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). The contemporaneous objection rule is an adequate and independent state ground which bars federal habeas corpus review. *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir.2005). Plain error review does not constitute a waiver of procedural default. *Mason v. Brunsman*, 483 Fed. Appx. 122, 130–31 (6th Cir.2012), cert. denied —— U.S. ——, 133 S.Ct. 447, 184 L.Ed.2d 273 (2012); *see also Shafer v. Wilson*, 364 Fed. Appx. 940, 945 (6th Cir.2010). Accordingly, applying the *Maupin* factors to the instant case, the undersigned recommends that the Court find that Ohio's contemporaneous objection rule is a state procedural rule that applies to Petitioner's fourth and fifth grounds for relief, Petitioner failed to comply with the contemporaneous objection rule, and the Ohio appellate court enforced the procedural rule when it applied a review for plain error. *See Durr v.*

*McLaren*, No. 15-1346, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015) (the first two *Maupin* prongs are met when the petitioner failed to object at trial and the state court review for plain error review). The third *Maupin* factor is also met because "the contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, and ... plain-error review is not inconsistent with the procedural default." *Durr,* 2015 WL 5101751, at *2, *quoting Awkal v. Mitchell*, 613 F.3d 629, 648–49 (6th Cir.2010).

Accordingly, the undersigned recommends that the Court find that Petitioner's Ground for Relief Number 4 is procedurally defaulted because he failed to raise the claim in the trial court by objection and plain error review by the Ohio appellate court does not exempt this ground for relief from procedural default and meets the *Maupin* factors. The undersigned recommends that the Court find the same with regard to Petitioner's Ground for Relief Number 5, to the extent that he asserts the alleged vagueness of ORC § 2925.041 in this Ground for Relief.

To the extent that Petitioner also asserts in either or both of these Grounds for Relief that his conviction under ORC § 2925.041 is against the manifest weight of the evidence, or if the Court interprets these Grounds as such, the undersigned recommends that the Court find that they are noncognizable claims before this Court. Federal habeas corpus relief is available only to correct constitutional violations. 28 U.S.C. § 2254(a). "A manifest-weight claim is a matter of state law and not cognizable on habeas review." *Smith v. Eppinger*, No. 1:15CV2701, 2019 WL 1439790, at *4 (N.D. Ohio Mar. 31, 2019), quoting *Riley v. Warden*, Noble Corr. Inst., No. 16-3912, 2017 WL 3597424, at *3 (6th Cir. Feb. 24, 2017). Accordingly, the undersigned recommends that the Court find that Petitioner's Grounds for Relief Numbers 4 and 5 are not cognizable before this Court to the extent that they are presented as manifest weight of the evidence assertions under Ohio law.

In Ground for Relief Number 6, Petitioner asserts that his conviction was not supported by sufficient evidence. ECF Dkt. #1 at 14. He asserts that his conviction "was obtained by false testimony orchestrated by prosecutory[sic] misconduct." *Id.* He provides no further detail as to these allegation. *Id.* Petitioner does indicate that he appealed this Ground at the state level, but a review of Petitioner's appellate briefs shows that he did not advance prosecutorial misconduct or false testimony allegations before the Ohio courts. ECF Dkt. #9-1 at 34, 51-53. Rather, in his

sufficiency of the evidence claims before the Ohio courts, he asserted that the prosecution failed to meet its burden of showing that he perversely disregarded a known risk by driving next to a school in order to prove a second degree felony illegal assembly conviction.  *Id.*  at 51-53, 132-145. Petitioner does not appear to raise this issue in Ground for Relief Number 6. Petitioner did present a claim regarding Mr. Boychi's alleged inconsistent statements as to the batteries before this Court, but he presented this in the context of a manifest weight of the evidence assignment of error, which the undersigned recommended that the Court find  is not cognizable before this Court. *Id*. at 53-56. Petitioner also presented an appellate assignment of error concerning an alleged *Brady* violation to the Ohio appellate court, but he made no allegations of prosecutorial misconduct or false testimony. *Id.* at 56-59.  Accordingly, the undersigned recommends that the Court decline to review the claims in Ground for Relief Number 6 because they are procedurally defaulted in that Petitioner failed to fairly present them before the Ohio courts so that the Ohio courts had the opportunity to rule on them. *Wagner*, 581 F.3d at 414-415.  Further, Ohio courts apply the doctrine of *res judicata*, which precludes a defendant from raising a claim that was raised or that could have been raised at trial or on direct appeal. *See Perry*, 226 N.E.2d 104; *Cole*, 443 N.E.2d 169.

### B.  Actual Innocence/Newly Discovered Evidence -To Excuse Procedural Defaults and as Stand-Alone Claim in Ground for Relief Number 8

In Ground for Relief Number 8, Petitioner asserts that he has newly discovered evidence establishing his actual innocence and he requests that the Court review affidavits that he has attached to his § 2254 federal habeas corpus petition.  ECF Dkt. #1; ECF Dkt. #s 1-1, 1-3.  Petitioner also relies upon this "newly discovered evidence" as grounds to excuse the procedural defaults of all of his Grounds for Relief.  The affidavits that Petitioner attaches are his own affidavit and the sworn affidavit of Jennifer Penrod, both of which he presented to the trial court with his motion for a new trial, which was denied.  *Id.*  In his affidavit, Petitioner asserts that his trial counsel failed to call Jennifer Penrod, who was in the vehicle with Petitioner on January 21, 2014. ECF Dkt. #1-3.  He contends that Ms. Penrod's testimony would have changed the outcome of his case and her testimony "has become newly discovered evidence." *Id*. at 1.  Petitioner continues that Mr. Boychi made false statements at trial and his January 22, 2014 statement to police was deliberately withheld

from the defense during trial and was released only after Mr. Boychi had been discharged as a State witness.  *Id.*  Petitioner further attests that the Barberton Police Department followed his vehicle for 2 miles before pulling him over a school zone.  *Id.*  Petitioner points out another case that occurred one month later in which he alleges that Bret Adkins was pulled over by the Barberton Police Department within 100 feet of where he was pulled over by police.  *Id.*  Petitioner asserts that he is a victim of entrapment and trial counsel failed to "suppress this matter, or at least make a clear understanding to all the jurors."  *Id.* at 2.  Petitioner attests that he is innocent of all of the charges against him.  *Id.*

Petitioner also attaches Ms. Penrod's sworn affidavit in which she stated that she was an occupant in the vehicle that Petitioner was driving on January 21, 2014 and she attests that neither she nor Petitioner knew the contents of the bag that Mr. Boychi had with him when he was sitting in the backseat of Petitioner's vehicle.  ECF Dkt. #1-1 at 1.  Ms. Penrod relates that Mr. Boychi asked Petitioner for a ride to his girlfriend's house and when Mr. Boychi got into Petitioner's vehicle, he had a white Save-A-Lot grocery bag with him.  *Id.*  She attests that when the police pulled over Petitioner, Mr. Boychi told the police that the bag belonged to Petitioner.  *Id.*

The undersigned recommends that the Court find that Petitioner's Ground for Relief Number 8 alleging a stand-alone claim of actual innocence on the basis of newly discovered evidence is not cognizable before this Court. In *Herrera v. Collins*, the Supreme Court held that "'[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.'" 506 U.S. 390, 400 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), quoting *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).  Since the Supreme Court has not yet recognized a freestanding actual innocence claim, the Sixth Circuit has repeatedly ruled that such claims are not cognizable on federal habeas review, especially in non-capital cases.  *See, e.g., Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)(and Sixth Circuit cases cited therein); *Thomas v. Perry*, Fed.Appx. 485, 487 (6th Cir. 2014); *Sitto v. Lafler*, 279 Fed.Appx. 381, 382 (6th Cir. 2008); *Wright v. Stegall*, 247 Fed.Appx. 709, 711 (6th Cir. 2007).  Accordingly, the undersigned recommends that the Court find that Petitioner's Ground for Relief Number 8 is not cognizable

before this Court as a free-standing actual innocence claim.

However, actual innocence based upon newly discovered evidence may be reviewed as a gateway claim to overcoming a procedural bar, such as the procedural defaults in the instant case. *See Schlup v. Delo*, 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  In order to succeed on this theory, Petitioner must show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.*  Petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324.  The United States Supreme Court has cautioned that the actual innocence exception should "remain rare" and should only be applied in the "extraordinary case." *Id.* at 321.

The undersigned recommends that the Court find that Petitioner fails to meet his burden of establishing that he is entitled to the actual innocence exception to excuse his procedural defaults. Petitioner cites to Ms. Penrod's affidavit as evidence of his actual innocence, but that affidavit does not establish his factual innocence.  Even presuming that the statements in Ms. Penrod's affidavit are true, *i.e.*, that Mr. Boychi brought a white Save-A-Lot bag with him into Petitioner's vehicle, neither she nor Petitioner knew the contents of that bag, and Mr. Boychi told the police that the white bag belonged to Petitioner when the police pulled over Petitioner's vehicle, this does not establish Petitioner's factual innocence, since testimony at trial was also presented establishing that Petitioner carried a box from his house to his vehicle and that box contained multiple packs of lithium batteries.  ECF Dkt. #1-1.

At trial, Detective Laurella, a detective for the Narcotics Bureau with the Barberton Police, was qualified as an expert in methamphetamine laboratories and the process for producing methamphetamine  and explained the process to the jury.  ECF Dkt. #9-3 at 11-30.  He testified that large quantities of lithium batteries are involved in the process of making methamphetamine. *Id*. at 15-19, 24-27.  Detective Laurella then testified that on January 21, 2014, while he was surveilling Petitioner's house due to reports of drug activity there, he observed Petitioner exit his house carrying a Save-A-Lot bag that looked full and he put it inside of the front passenger side of his vehicle.  ECF Dkt. #9-3 at 30-31, 75.  He further testified that he saw Petitioner go back into the house and a short

time later, he saw Petitioner come out of the house carrying a box which he placed in the rear passenger side of his vehicle. *Id.* at 32. Detective Laurella also testified that he saw Petitioner get into his vehicle and Detective Laurella then pulled out and began to follow him, radioing another officer to let him know that he thought Petitioner had meth-making materials in the vehicle. *Id.* at 38. He observed Petitioner drive to another house and saw other people arrive at the house right after Petitioner, including Mr. Boychi, who he observed carry out a Save-A-Lot bag and put it in the backseat of Petitioner's vehicle. *Id.* at 41, 75. Detective Laurella testified that he ran Mr. Boychi's name over the police radio and discovered that he had active warrants out for his arrest. *Id.* at 42. Detective Laurella testified that he waited outside of the house and after about 20 minutes, he saw Petitioner come out of the house, then Ms. Penrod, and then Mr. Boychi, and they went to Petitioner's vehicle, where Petitioner got into the driver seat, Ms. Penrod got into the passenger seat, and Mr. Boychi got into the back passenger seat. *Id.* at 43. Detective Laurella further testified that a search of the Save-A-Lot bag in the front passenger seat revealed no lithium batteries and only Ms. Penrod's personal belongings and a search of the Save-A-Lot bag in the backseat was full of lithium batteries. *Id.* at 76.

Thus, even if the Court chose to review Ms. Penrod's affidavit even though it was known to Petitioner at the time of his trial that Ms. Penrod was not called as a witness, the affidavit fails to establish that Petitioner is factually innocent for actual innocence purposes. Ms. Penrod's affidavit addresses only the Save-A-Lot bag and does not address the box that Detective Laurella saw Petitioner carry from his house to his vehicle which was found to be full of lithium batteries when police searched it during the vehicle stop. Detective Laurella testified that the majority of the 126 lithium batteries that the police recovered were found in the box and not the Save-A-Lot bag. ECF Dkt. #9-3 at 32.

Accordingly, the undersigned recommends that the Court find that Petitioner has not established actual innocence in order to show extraordinary circumstances warranting review of his federal habeas corpus petition despite his procedural defaults.

## V.     CONCLUSION AND RECOMMENDATION

For the above reasons, the undersigned RECOMMENDS that the Court DISMISS WITH

-20-

PREJUDICE Petitioner's instant § 2254 federal habeas corpus in its entirety with prejudice because he has procedurally defaulted all of his Grounds for Relief and he has failed to establish cause to excuse the procedural defaults or actual innocence in order to otherwise review his Grounds for Relief. ECF Dkt. #1. Consequently, the undersigned further recommends that the Court deny Petitioner's "Request for a Summary Judgment/Ruling. ECF Dkt. #11.


DATE: May 3, 2019                           */s/ George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE



        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).